IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
June 8, 2004 Session

## WILLIAM GLENN WILEY v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 95-C-1918      Walter C. Kurtz, Judge**

_____

**No. M2003-00661-CCA-R3-PC - Filed September 23, 2004**

_____

The post-conviction court ordered a new trial relating to the petitioner's felony murder conviction for which he was sentenced to life without parole, but denied him relief regarding his especially aggravated robbery conviction. The state appeals, contending the post-conviction court erred in granting relief based upon the trial court's failure to charge second degree murder as a lesser-included offense of felony murder. The petitioner cross-appeals, asserting: (1) he received ineffective assistance of counsel at the trial level; (2) he is entitled to relief based upon the results of DNA testing; (3) the trial court erred in failing to charge intoxication as a defense; (4) the trial court erred in admitting victim impact evidence and in failing to properly instruct the jury during the penalty phase; and (5) the trial court improperly instructed the jury regarding the prior violent felony aggravating circumstance. We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOE G. RILEY, J., delivered the opinion of the court, in which JERRY L. SMITH and ALAN E. GLENN, JJ., joined.

Paul G. Summers, Attorney General and Reporter; Elizabeth T. Ryan, Senior Counsel; Victor S. Johnson, III, District Attorney General; and Lisa A. Naylor, Assistant District Attorney General, for the appellant, State of Tennessee.

Jodie A. Bell, Nashville, Tennessee, for the appellee, William Glenn Wiley.

### OPINION

A jury convicted the petitioner of the felony murder and especially aggravated robbery of Frank Andrews for events occurring on June 6, 1995. The petitioner received concurrent sentences of life without parole and twenty-five years, respectively. A panel of this court upheld the petitioner's convictions and sentences on direct appeal. *See* State v. William Glenn Wiley, No. M1999-02487-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 303 (Tenn. Crim. App. Apr. 20, 2001), *perm. to app. denied* (Tenn. 2001).

We relate the following facts as appearing in this court's opinion on direct appeal:

On June 6, 1995, Metro police officers, Lt. Jim Stevens and Officer David Corman, received a call regarding a body found in a motel room at the Knights Inn. The victim, who was identified as Frank Andrews, had moved to Nashville to pursue his career as a songwriter and at the time was residing at the Knights Inn Motel. Upon arriving, the officers noticed that the room was in disarray and blood and glass were found on the bed. In the bathroom, the officers discovered the body of the victim. The victim's legs and lower body were situated partially in the bathtub while the victim's head rested face-down in the commode. Because both the toilet and the victim's head were covered with blood, it appeared that the victim had been struck violently on the head. The officers observed only blood in the commode, and found no trace of vomit. The victim's pockets had also been turned inside out. Officers further discovered a cut lamp cord, a phone cord, and a pocketknife in the bathroom. The lamp cord found in the bathtub had been cut from one of the lamps in the bedroom. Although officers retrieved $32.50 of bloody money from the bathtub, neither the victim's wallet nor money clip was found at the scene.

The [petitioner] was employed as a groundskeeper for the motel. On the day of the murder, the [petitioner] and his girlfriend, who also worked there as a maid, disappeared without notice to their employer and without picking up their paychecks. Officers were able to remove fingerprints from a broken vodka bottle and a broken orange juice bottle found in the room. Upon discovering that the fingerprints recovered matched those of the [petitioner], police issued a warrant for his arrest. The [petitioner] was later located and arrested in Evansville, Indiana.

During his arrest, the [petitioner] told officers that he and the victim had been drinking all day and "just got drunk." According to the [petitioner], "[the victim] said that [he had given] me forty dollars to go buy crack with and said I didn't go get the crack, I just kept the money. Which wasn't true. . . Then one thing lead to another." The [petitioner] then hit the victim over the head twice with the vodka bottle and the victim fell onto the bed. The [petitioner] stated that he helped the victim up and took him into the bathroom so he could "clean up or whatever." The [petitioner] stated that he then "took off" and grabbed the victim's wallet, which contained $240, on the way out. The [petitioner] asserts that the victim was still alive and conversant when he left the room and that he had no idea the victim was seriously injured when he left.

Although the victim's blood alcohol level was .34 at the time of death, an autopsy revealed that the victim died as a result of blunt force trauma to the head and not from alcohol poisoning. The autopsy also revealed defensive wounds on the victim's right hand and forearm. The [petitioner] did not testify at trial. The defense, however, presented the testimony of Dr. Charles Harlan, who testified that the victim's death resulted from acute ethyl alcohol poisoning, rather than from blunt force trauma.

*Id.* at ** 3-5.

# I. POST-CONVICTION RELIEF HEARING

## A. Trial Counsel's Testimony

Trial counsel testified the primary defense to felony murder was that the petitioner took the victim's wallet as an afterthought and that the theft was not so closely related to the homicide to justify the imposition of felony murder. Trial counsel also presented testimony that the victim's death was caused by alcohol poisoning rather than the blows administered by the petitioner. Trial counsel recalled the state presented a plea offer of life imprisonment; however, the petitioner rejected the offer. The case went to trial in April 1999.

Trial counsel testified the discovery material received from the state included police reports regarding the petitioner's statement to the officers. Trial counsel said he believed the petitioner's statement was helpful to the defense. He noted the petitioner's fingerprints, which were found on the broken vodka bottle, supported the petitioner's statement to the police.

Trial counsel testified his investigation of the case adequately prepared him for trial. He acknowledged he did not investigate the victim's criminal background and was unaware of the victim's criminal record involving assaultive behavior in Florida. Trial counsel stated he did not believe the victim's prior convictions would have been admissible at trial because the petitioner was unaware of the victim's background when the offenses occurred.

Trial counsel testified that prior to trial, he interviewed the petitioner, the petitioner's mother, two detectives, and Dr. Harlan. Trial counsel believed he provided Dr. Harlan with all necessary medical records. Trial counsel explained that although the cab driver and the motel owner could have been potential witnesses, he did not interview them because he did not believe their testimony would be helpful to the defense. Trial counsel stated he did not interview Michelle Sheffield, the petitioner's girlfriend at the time of the offenses, because either the petitioner indicated he did not want him to interview her, she would be unable to provide favorable information, or she could not be located. Trial counsel further stated the prosecution was also attempting to locate Sheffield, and he believed Sheffield would have been a more favorable witness for the state.

Trial counsel identified a police report regarding the cab driver, Arthur Lee Woods, indicating the victim contacted him on June 5, 1995, "at approximately 13:00 hours" and requested two beers. The petitioner informed trial counsel that in the victim's intoxicated condition, he may have mistaken the petitioner as a cab driver who may have owed the victim money. Trial counsel further learned that on prior occasions, a cab driver may have brought either prostitutes or alcohol to the victim's motel room. Trial counsel testified that, nevertheless, the evidence did not suggest that Woods was present when the offenses occurred, and trial counsel did not believe the victim's intoxication was a contested issue.

Trial counsel recalled Dr. Harlan testified the victim died as a result of acute alcohol poisoning. Furthermore, the results of the victim's blood alcohol tests which were introduced at trial indicated the victim had a blood alcohol level of .34 percent. Trial counsel acknowledged he did not introduce photographs indicating the presence of alcohol inside the victim's motel room.

Trial counsel stated that during voir dire, he did not object to several of the prosecutor's comments which the petitioner now claims were improper. Trial counsel explained that he reserved his objections for matters which were "moderately significant." Trial counsel stated he believed the objections would have been prejudicial to the petitioner.

Trial counsel testified he did not object to the introduction of crime scene photographs of the victim during trial. Trial counsel discussed the introduction of the photographs with the prosecutor and opined that the state would be entitled to introduce the photographs due to its theory of the case.

Trial counsel stated he did not recall learning any information regarding a bloody towel found at the crime scene, which allegedly had the petitioner's blood on it. Trial counsel also did not recall discussing the photograph of the bloody towel with the petitioner. Trial counsel was unable to recall the petitioner stating the victim struck him in the nose. Trial counsel testified that had he received this information, he would have considered conducting DNA analysis on the towel relating to the petitioner's self-defense theory.

Trial counsel recalled the electrical cord was one of "the most damaging or most difficult to explain items in the entire case." The electrical cord was discovered underneath the victim's body, was tied in knots, and appeared to have been cut rather than pulled from the wall. Trial counsel explained he attempted to minimize the potential impact of the cord. Trial counsel stated that although he could have alleged that the victim used the cord in an unusual sexual activity, he did not feel comfortable making this argument.

Trial counsel testified he was aware of the controversy surrounding Dr. Harlan when he called him as a witness at trial. Trial counsel recalled that Dr. Harlan was "at odds" with both the Davidson County authorities and Dr. Bruce Levy, who also testified at trial. Trial counsel stated he assumed that at the time of trial, he was aware of pending litigation regarding Dr. Harlan's prior misidentification of a corpse. Trial counsel said Dr. Harlan himself objected to questioning concerning pending litigation. Trial counsel stated he and Dr. Harlan discussed what the doctor's demeanor should be before the jury, and trial counsel advised Dr. Harlan against making offensive comments before the jury. Trial counsel further stated he was unaware that Dr. Harlan would refer to the victim as a "commode-hugging drunk" when he testified.

Trial counsel stated that although the petitioner's statement to the police indicated the petitioner had been consuming alcohol, trial counsel did not request an intoxication instruction. Trial counsel said an intoxication instruction may have impacted the intent requirement of the underlying felony of felony murder. Trial counsel stated that although the trial court charged reckless homicide as a lesser-included offense of felony murder, the court did not charge second degree murder.

Trial counsel testified the state filed a notice of intent to seek life without the possibility of parole. One of the aggravating factors relied upon by the state was the prior violent felony aggravating circumstance based upon the petitioner's two robbery convictions in Ohio. Trial counsel stated he did not research Ohio law prior to trial, explaining that he must have assumed Ohio law was similar to Tennessee law in which robbery would be considered a crime of violence. Trial counsel further stated he did not object at trial to the trial court's jury instructions classifying the

prior robbery convictions as crimes of violence. Trial counsel acknowledged that when the state offered victim impact evidence during the penalty phase, he did not object, request a jury-out hearing, or request a special jury instruction.

Trial counsel stated that when the petitioner testified during the penalty phase, he was an "adequate" witness on direct examination. However, during cross-examination, the petitioner's answers were "somewhat combative." Trial counsel opined that the state's cross-examination of the petitioner was one of the primary reasons he received life without parole.

## B. Petitioner's Testimony

The petitioner testified that during his first meeting with trial counsel, trial counsel stated the petitioner's actions appeared to be in self-defense. The petitioner stated he and trial counsel met on four to six occasions for a total of approximately four hours. During each meeting, trial counsel represented they would maintain a theory of self-defense. The petitioner stated he attempted to contact trial counsel on numerous occasions, but trial counsel did not return his telephone calls. The petitioner further stated he requested that trial counsel interview the owner of the motel and those who discovered the victim's body, but trial counsel did not adhere to the request.

The petitioner testified he informed trial counsel that on the day of the offenses, he met the victim by the motel pool where they began drinking alcohol. They subsequently went to the victim's room where they continued to consume alcohol. The victim asked the petitioner "where's the $40 I give [sic] you to go buy some dope?" When the petitioner denied taking the money, the victim asked him if he was the cab driver. According to the petitioner, he and the victim then argued, and the victim "rushed" him. During the struggle, the petitioner's nose was struck and began bleeding; the petitioner then fell against a dresser. The petitioner retrieved a vodka bottle with his right hand while attempting to push the victim off of him with his left hand. The petitioner then struck the victim, who was unaffected by the blow. The petitioner struck the victim a second time and pushed the victim backwards onto the bed. The victim arose and made a statement, and the petitioner helped him to the bathroom. The petitioner informed trial counsel that as he was leaving, he retrieved the victim's wallet from the night stand. The petitioner then left the motel with Sheffield and the petitioner's son.

The petitioner stated he did not view the photograph of the bloody towel prior to trial, and he first became aware of the bloody towel when the state introduced it at trial. The petitioner recalled that upon learning of the towel, he informed trial counsel that his blood was on the towel, and trial counsel stated "it did not matter." On cross-examination, the petitioner acknowledged he did not tell either the detectives or trial counsel that he was struck in the nose. The petitioner stated he only told trial counsel that he and the victim were "fighting."

The petitioner testified he told trial counsel that he was unaware of the electrical cords. The petitioner stated that while he and the victim were drinking alcohol, two prostitutes entered the room and retrieved money. The petitioner believed the prostitutes may have used the cords.

The petitioner stated trial counsel never informed him that Dr. Harlan was under investigation for the misidentification of a body. The petitioner maintains that if trial counsel had

-5-

provided him with this information, he could have instructed trial counsel to seek another expert witness. The petitioner acknowledged the purpose of Dr. Harlan's testimony was to create reasonable doubt regarding the cause of the victim's death.

The petitioner stated trial counsel informed him that he would testify; however, when the trial court ruled that he could be questioned regarding his prior record, trial counsel advised him against testifying. According to the petitioner, he was previously convicted in Ohio of two counts of robbery for driving a vehicle while another man committed two purse snatchings. The petitioner stated that had he testified at trial, his testimony would have been consistent with the information he related to trial counsel. He would have informed the jury that when he left the victim's room, the victim was alive and was in the bathroom attempting to rinse his head "in the faucet - the toilet."

Following the post-conviction relief hearing, the post-conviction court granted the petitioner's request for DNA analysis on the bloody towel pursuant to the Post-Conviction DNA Analysis Act of 2001. *See* Tenn. Code Ann. § 40-30-303 (2003). The results of the DNA analysis indicated the petitioner's blood was on the towel.

## II. POST-CONVICTION COURT'S FINDINGS

In its written findings, the post-conviction court noted it was "not impressed" with the results of the DNA analysis indicating the presence of the petitioner's blood on the towel. The court noted the attack on the victim was "extremely violent," and defensive wounds were discovered on the victim's right hand and forearm. The court found that even if the victim struck the petitioner in his nose, the doctrine of self-defense does not authorize "beating the victim to death." The post-conviction court accredited trial counsel's testimony that the petitioner did not inform him that the victim struck him in his nose causing it to bleed.

The post-conviction court found trial counsel was not ineffective in failing to investigate the victim's prior convictions for assaultive offenses in Florida, even though the convictions may have been admissible at trial to establish the victim as the first aggressor. The court noted the petitioner's contention failed for the same reason his argument regarding allegedly being struck in the nose failed.

Regarding the petitioner's contention that his prior robbery convictions in Ohio were not crimes of violence and were improperly used to support the (i)(2) aggravating factor, the post-conviction court found robbery was a crime of violence in Ohio. The court further found trial counsel was not ineffective in failing to request an intoxication instruction, noting the evidence was insufficient to support such an instruction and that intoxication is not a defense to felony murder.

Regarding the trial court's failure to charge second degree murder as a lesser-included offense of felony murder, the post-conviction court noted that although the trial court charged reckless homicide as a lesser-included offense, the trial court was of the opinion that second degree murder was not a lesser-included offense of felony murder. The post-conviction court further noted that since the petitioner's trial in 1999, the Tennessee Supreme Court has concluded that second degree murder is a lesser-included offense of felony murder. *See* State v. Ely, 48 S.W.3d 710, 721-22 (Tenn. 2001). The post-conviction court found that the correct instruction regarding lesser-

included offenses "enhances the integrity and reliability of the fact finding process of the trial" and that the failure to instruct the applicable lesser-included offenses would raise "serious questions about the accuracy of guilty verdicts in past trials." The post-conviction court concluded Ely applied retroactively and found that, given the facts of the case, a reasonable juror could have convicted the petitioner of second degree murder. The post-conviction court found the failure to charge second degree murder as a lesser-included offense was not harmless error. The court vacated the petitioner's felony murder conviction but denied relief regarding his especially aggravated robbery conviction.

## III. STANDARD OF REVIEW

The post-conviction judge's findings of fact on post-conviction hearings are conclusive on appeal unless the evidence preponderates otherwise. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). Those findings of fact are afforded the weight of a jury verdict, and this court is bound by the findings unless the evidence in the record preponderates against those findings. Jaco v. State, 120 S.W.3d 828, 830 (Tenn. 2003). This court may not reweigh or reevaluate the evidence, nor substitute its inferences for those drawn by the post-conviction court. State v. Honeycutt, 54 S.W.3d 762, 766 (Tenn. 2001). However, the post-conviction court's conclusions of law are reviewed under a purely *de novo* standard with no presumption of correctness. Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

## IV. LESSER-INCLUDED OFFENSES

The state contends the post-conviction court erred in granting the petitioner relief due to the trial court's failure to charge second degree murder as a lesser-included offense of felony murder. Specifically, the state maintains the petitioner waived the issue by failing to raise it on direct appeal. The petitioner submits an exception to waiver applies because Ely created a new constitutional rule in recognizing second degree murder as a lesser-included offense of felony murder pursuant to State v. Burns, 6 S.W.3d 453 (Tenn. 1999).

A ground for post-conviction relief is waived "if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented." Tenn. Code Ann. § 40-30-106(g). However, the claim for relief is not waived if it is (1) "based upon a constitutional right not recognized as existing at the time of trial," and (2) "either the federal or state constitution requires retroactive application of that right." *Id.* at (g)(1).

In Burns, 6 S.W.3d at 467, which was filed on November 8, 1999, after the trial of this case, the Tennessee Supreme Court adopted a test in determining lesser-included offenses. Under this test, an offense is a lesser-included offense if:

> (a) all of its statutory elements are included within the statutory elements of the offense charged; or
>
> (b) it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing

(1) a different mental state indicating a lesser kind of culpability; and/or

(2) a less serious harm or risk of harm to the same person, property or public interest; or

(c) it consists of

(1) facilitation of the offense charged or of an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or

(2) an attempt to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or

(3) solicitation to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b).

*Id.* In <u>Ely</u>, 48 S.W.3d at 714, which was filed on June 5, 2001, our state supreme court concluded second degree murder, reckless homicide, and criminally negligent homicide were lesser-included offenses of felony murder under the <u>Burns</u> analysis.

At the time the instant offenses were committed in June 1995, felony murder was "a <u>reckless</u> killing of another committed in the perpetration of, or attempt to perpetrate any . . . robbery." Tenn. Code Ann. § 39-13-202(a)(2) (Supp. 1994) (emphasis added).[1] The petitioner's trial occurred in April 1999; he filed his notice of appeal on November 8, 1999 (the same date <u>Burns</u> was filed); the direct appeal was docketed for oral argument before this court on January 11, 2001; this court filed its opinion on April 20, 2001; and permission to appeal was denied October 8, 2001.

This court has previously declined to apply <u>Burns</u> retroactively to post-conviction cases where the direct appeal was concluded prior to <u>Burns</u>. *See* <u>Anthony Hodges v. State</u>, No. M2001-03068-CCA-R3-PC, 2002 Tenn. Crim. App. LEXIS 1037, at *14 (Tenn. Crim. App. Dec. 4, 2002), *perm. to app. denied* (Tenn. 2004); <u>James Richard Bishop v. State</u>, No. E2000-01725-CCA-R3-PC, 2001 Tenn. Crim. App. LEXIS 513, at **23-24 (Tenn. Crim. App. July 13, 2001). However, this direct appeal was not completed prior to <u>Burns</u>. The petitioner filed his notice of appeal on the same day in which <u>Burns</u> was decided.

We also note that this case involved a crime committed in June 1995, which was prior to the adoption of the present felony murder statute which was at issue in <u>Ely</u>. *See* 1995 Tenn. Pub. Acts, ch. 460, §§ 1, 4 (removing "reckless" *mens rea* requirement from felony murder statute for offenses committed on or after July 1, 1995). The prior statute, which required a "reckless" *mens rea* for felony murder, applied to this offense. *See* Tenn. Code Ann. § 39-13-202(a)(2) (Supp. 1994). Furthermore, at the time of trial, the law was that second degree murder was not a lesser-included offense of "reckless" felony murder. *See* <u>State v. Gilliam</u>, 901 S.W.2d 385, 390-91 (Tenn. Crim. App. 1995), *perm. to app. not sought*; *see also* <u>State v. Ben Mills</u>, No. W1999-01175-CCA-R3-CD, 2002 Tenn. Crim. App. LEXIS 405, at *22 (Tenn. Crim. App. May 3, 2002), *perm to app. dismissed*

[1]Effective July 1, 1995, the statute was amended deleting "reckless" from the definition.

(Tenn. 2002). The only lesser-included offenses were reckless homicide and criminally negligent homicide. Gilliam, 901 S.W.2d at 391. Thus, by failing to charge second degree murder as a lesser-included offense of felony murder, the trial court acted in accordance with the case law at that time.

The petitioner contends an exception to waiver applies in that Ely recognized a new constitutional rule which requires retroactivity. However, the holding in Ely was based upon our state's "statutory scheme for homicide and on the definition of lesser-included offense as adopted in Burns." Ely, 48 S.W.3d at 722 n.5. Thus, if a new constitutional rule regarding lesser-included offenses has been recognized, it must have been recognized in Burns. As previously noted, the petitioner's direct appeal was in the appellate "pipeline" when Burns was filed.

The petitioner relies upon Meadows v. State, 849 S.W.2d 748 (Tenn. 1993), in contending that Ely should apply retroactively to his case. According to Meadows, "a new state constitutional rule is to be retroactively applied to a claim for post-conviction relief if the new rule materially enhances the integrity and reliability of the fact finding process of the trial." *Id.* at 755. Stated another way, retroactive application in post-conviction cases is necessary "when the old rule substantially impairs the truth-finding function of the trial and thereby raises serious questions about the accuracy of guilty verdicts in past trials." *Id.* at 754.

In Burns, 6 S.W.3d at 465, the Tennessee Supreme Court noted the former definition of "lesser-included offense," which involved a statutory elements approach, may, in some cases, deprive a defendant of his right to present a defense. Furthermore,

> a trial court's failure to inform the jury of its option to find the defendant guilty of the lesser offense would impair the jury's truth-ascertainment function. Consequently, neither the prosecution nor the defense should be allowed, based on their trial strategy, to preclude the jury from considering guilt of a lesser offense included in the crime charged. To permit this would force the jury to make an "all or nothing" choice between conviction of the crime charged or complete acquittal, thereby denying the jury the opportunity to decide whether the defendant is guilty of a lesser included offense established by the evidence.

*Id.* at 471-72 (quoting State v. Bolden, 979 S.W.2d 587, 593 (Tenn. 1998)). Based upon this language, we can only conclude that Burns announced a new "constitutional rule" that "materially enhances the integrity and reliability of the fact finding process of the trial." *See* Meadows, 849 S.W.2d at 755. Thus, we conclude Burns should apply retroactively to this post-conviction case.

The state maintains this free-standing claim is waived as a claim for post-conviction relief due to the petitioner's failure to raise the issue on direct appeal. Because the Burns opinion was released on the same day as the filing of notice of direct appeal in the present case, the petitioner's only method of raising the trial court's failure to charge the applicable lesser-included offenses pursuant to Burns would be under the plain error doctrine. *See* Tenn. R. Crim. P. 52(b). Such an attempt would be a futile gesture. Because the law regarding lesser-included offenses was unclear at the time of the petitioner's trial, his claim would not have risen to the level of plain error. *See* State v. Terry, 118 S.W.3d 355, 359-60 (Tenn. 2003). Thus, if the holding in Burns did not apply retroactively to the case at bar, the petitioner would be placed in a procedural "catch 22."

Based upon Burns, we conclude second degree murder would be a lesser-included offense of "reckless" felony murder as that offense was defined prior to July 1, 1995, just as it is under felony murder as it is defined for offenses committed on or after July 1, 1995. *See* Ely, 48 S.W.3d at 721-22. In Ely, second degree murder was found to be a lesser-included offense of felony murder under the current statute based upon part (b) of Burns. *Id.* The additional *mens rea* of recklessness in the prior statute would not eliminate second degree murder as a lesser-included offense of felony murder under the rationale of Ely.

If an offense is found to be a lesser-included offense, the court must next ascertain whether the evidence justifies a jury instruction on the lesser-included offense. State v. Bowles, 52 S.W.3d 69, 75 (Tenn. 2001). To do so, the court must first determine whether there is evidence that "reasonable minds" could accept to establish the lesser-included offense. Burns, 6 S.W.3d at 469. The court must view the evidence liberally in a light most favorable to the existence of the lesser-included offense without judging its credibility. Ely, 48 S.W.3d at 722; Burns, 6 S.W.3d at 469. Finally, the court must determine if the evidence is "legally sufficient" to support a conviction for the lesser-included offense. Burns, 6 S.W.3d at 469.

Harmless error relating to the failure to charge lesser-included offenses must be shown "beyond a reasonable doubt." Ely, 48 S.W.3d at 727. The proper inquiry is "whether it appears beyond a reasonable doubt that the error did not affect the outcome of the trial." State v. Allen, 69 S.W.3d 181, 191 (Tenn. 2002). In making the harmless error determination, this court must "conduct a thorough examination of the record, including the evidence presented at trial, the defendant's theory of defense, and the verdict returned by the jury." *Id*.

Second degree murder is a "knowing killing of another." Tenn. Code Ann. § 39-13-210(a)(1). Second degree murder is a result-of-conduct offense. State v. Page, 81 S.W.3d 781, 783 (Tenn. Crim. App. 2002). One acts "knowingly" with respect to a result of his conduct when he is "aware that the conduct is reasonably certain to cause the result." Tenn. Code Ann. § 39-11-302(b).

In his statement to the police, the petitioner maintained while he and the victim were intoxicated, they argued; "one thing led to another"; and the petitioner struck the victim over the head twice with a vodka bottle. The jury could have reasonably believed the petitioner was aware that his conduct was reasonably certain to cause the victim's death. Thus, a conviction for second degree murder was supported by the evidence, and the trial court's failure to charge second degree murder as a lesser-included offense of felony murder was error. Furthermore, we are unable to conclude such error was harmless beyond a reasonable doubt. *See* Ely, 48 S.W.3d at 727 (noting the trial court's failure to instruct the jury on second degree murder as a lesser-included offense of felony murder when the defendant participated in repeatedly striking the victim over the head with a brick resulting in the victim's death was reversible error).

Accordingly, we conclude the post-conviction court correctly granted the petitioner relief based upon the trial court's failure to charge second degree murder as a lesser-included offense of felony murder.

# V. INEFFECTIVE ASSISTANCE OF COUNSEL

The petitioner contends he received ineffective assistance of counsel at trial. Specifically, he maintains trial counsel failed to adequately investigate the law and facts of the case, failed to develop a reasonable trial strategy, failed to object to the prosecutor's improper statements during voir dire, failed to develop issues relating to the petitioner's intoxication, failed to object to the introduction of photographs, failed to ask the trial court to charge second degree murder as a lesser-included offense of felony murder, failed to object to the state's reliance upon the (i)(2) aggravating circumstance during the penalty phase, and failed to object to victim impact evidence. The petitioner further submits the cumulative errors regarding trial counsel's deficient performance resulted in prejudice.

For a petitioner to successfully overturn a conviction based on ineffective assistance of counsel, the petitioner must first establish that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Second, the petitioner must show that the deficiencies "actually had an adverse effect on the defense." Strickland v. Washington, 466 U.S. 668, 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Should the petitioner fail to establish either factor, the petitioner is not entitled to relief. Our supreme court described the standard of review as follows:

> Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the defendant makes an insufficient showing of one component.

Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697, 104 S. Ct. at 2069). The petitioner is not entitled to the benefit of hindsight; the petitioner may not second-guess a reasonably based trial strategy; and the petitioner may not criticize a sound, but unsuccessful, tactical decision made after adequate preparation for the case. Adkins v. State, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); *see* Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

The petitioner bears the burden of proving his allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f) (2003). The findings of fact made by the post-conviction court are conclusive and will not be disturbed unless the evidence contained in the record preponderates against them. *See* Jaco v. State, 120 S.W.3d 828, 830 (Tenn. 2003).

## A. Failure to Investigate

The petitioner first asserts trial counsel failed to interview the cab driver, the motel owner, and Michelle Sheffield, the petitioner's girlfriend when the offenses occurred. However, these witnesses did not testify at the post-conviction relief hearing. Thus, the petitioner has failed to establish prejudice. *See* State v. Black, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990).

The petitioner next contends trial counsel was ineffective in failing to investigate the victim's background. According to the petitioner, if trial counsel had conducted such an investigation, he would have learned of the victim's prior assaultive behavior which he could have presented at trial in order to establish the victim as the first aggressor.

Pursuant to the self-defense doctrine,

A person is justified in threatening or using force against another person when and to the degree the person reasonably believes the force is immediately necessary to protect against the other's use or attempted use of unlawful force. The person must have a reasonable belief that there is an imminent danger of death or serious bodily injury. The danger creating the belief of imminent death or serious bodily injury must be real, or honestly believed to be real at the time, and must be founded upon reasonable grounds. . . .

Tenn. Code Ann. § 39-11-611(a).

The victim's criminal record from Florida, which was admitted into evidence at the post-conviction relief hearing, indicates the victim was arrested for battery in February 1992, was convicted of the offense in April 1993, and received one year on probation. In August 1994, the victim was arrested for battery, and the charge was subsequently dismissed. According to the police reports, each incident involved an act of domestic violence committed while the victim was intoxicated.

The victim's prior acts of violence may have been admissible at the petitioner's trial in order to establish the victim as the first aggressor, even if the petitioner was unaware of these acts. *See* State v. Ruane, 912 S.W.2d 766, 779 (Tenn. Crim. App. 1995). However, as observed by the post-conviction court, even if the victim initiated the altercation by striking the petitioner in the nose, the doctrine of self-defense does not authorize "beating the victim to death." Thus, we conclude the petitioner has failed to establish prejudice.

The petitioner maintains that by failing to conduct an adequate investigation and failing to adequately discuss the case with him, trial counsel did not develop a theory of self-defense. The petitioner submits that if trial counsel had discussed the case with him, trial counsel would have learned of his bloody nose and the bloody towel. However, at the post-conviction relief hearing, trial counsel testified that during his investigation, he obtained the police reports which included the petitioner's statement, reviewed photographs, and interviewed numerous witnesses, including the petitioner. The petitioner stated he and trial counsel discussed the events, and he acknowledged that he did not inform trial counsel of his bloody nose. The post-conviction court accredited trial counsel's testimony and found no merit to the petitioner's assertions. The evidence does not preponderate against this finding. This argument is without merit.

## B. Failure to Develop a Reasonable Trial Strategy

The petitioner asserts trial counsel failed to develop a reasonable trial strategy by ignoring the petitioner's claims of self-defense. However, the post-conviction court accredited trial counsel's

testimony that the petitioner never informed trial counsel that the victim struck him in the nose. Trial counsel chose to present evidence suggesting the victim died of alcohol poisoning and not as a result of the altercation, and that the theft was an "afterthought" insufficient to justify a felony murder conviction. Trial counsel made a tactical decision resulting in a reasonably-based trial strategy which may not be second-guessed, even though it was unsuccessful. *See* Adkins, 911 S.W.2d at 347. Thus, this issue is without merit.

The petitioner submits trial counsel was ineffective in failing to raise "reasonable doubt" regarding the electrical cord found near the victim's body. Trial counsel stated he attempted to minimize the impact of the cord, but the cord was one of the "most difficult to explain items in the entire case." Trial counsel explained that due to the composition of the jury, he did not feel comfortable arguing that the victim used the cord in an unusual sexual activity. Due to the paucity of evidence in support of the petitioner's theory, we conclude trial counsel made a reasonable tactical decision to refrain from arguing this theory at trial. Accordingly, the petitioner is not entitled to relief on this issue.

The petitioner challenges trial counsel's decision to contest the victim's cause of death through the testimony of Dr. Harlan. The petitioner maintains trial counsel failed to adequately prepare for Dr. Harlan's testimony, failed to object to the prosecutor's questions regarding pending litigation against Dr. Harlan, and failed to prepare the doctor to act appropriately before the jury. However, trial counsel made a tactical decision to contest the cause of the victim's death, a theory which, if accepted by the jury, would have prevented a felony murder conviction. As to trial counsel's alleged failure to object to the prosecutor's question concerning pending litigation, our examination of the record reveals no such question. The prosecutor asked if "it's important when, let's say, you have a disaster where more than one person is killed - -." Dr. Harlan interrupted and stated, "[T]hat's under litigation and I don't think we can go there." There was no further questioning concerning the issue. We discern no deficiency by trial counsel. Furthermore, trial counsel stated he advised the doctor against making offensive comments while testifying. Therefore, the petitioner has established neither deficiency nor prejudice.

## C. Failure to Object During Voir Dire

The petitioner asserts trial counsel failed to object to "highly inflammatory, improper and objectionable" statements made by the prosecutor during voir dire. According to the petitioner, trial counsel failed to object to the following statements: the victim was the "murder victim" or "my victim"; the wounds on the victim's hands were "defensive wounds, wounds that were incurred when Mr. Andrews was trying to protect himself from being stabbed by the defendant"; the offense was "a very brutal crime. Mr. Andrews did not go gently into the night"; and one of the medical examiners was "a good guy though he's going to testify for the State. He's one of the good guys." The prosecutor also asked the jurors:

> . . . will all of you promise me that you will consider that in determining whether or not this individual, whose head was submerged in a toilet, whose body was found in the restroom cut to shreds, whether he died as a result of being stabbed in the head with a bottle or whether he died because he had drunk alcohol?

-13-

Trial counsel explained he did not object to the prosecutor's statements because he usually reserved his objections for "moderately significant" matters. He further explained he believed the objections would have been prejudicial to the petitioner. Thus, trial counsel made a tactical decision to refrain from objecting. We further conclude, in light of the evidence presented at trial, that the petitioner has failed to establish that these comments prejudiced him. Accordingly, the petitioner is not entitled to relief on this issue.

## D. Failure to Develop Issues of the Petitioner's Intoxication

The petitioner contends trial counsel was ineffective in failing to develop his intoxication as a defense and in failing to request an intoxication instruction at trial. Intoxication is generally not a defense; however, proof of intoxication, whether voluntary or involuntary, is admissible if such evidence is relevant to negate a culpable mental state. Tenn. Code Ann. § 39-11-503(a). In his statement to the police, the petitioner maintained he was "drunk" when the offenses occurred. His statement does not indicate any such intoxication was involuntary. Evidence of voluntary intoxication cannot negate the element of recklessness required to establish felony murder under the former statute. *See* State v. James Christopher Tatrow, No. 03C01-9707-CR-00299, 1998 Tenn. Crim. App. LEXIS 1169, at *29 (Tenn. Crim. App. Nov. 2, 1998); Tenn. Code Ann. § 39-11-503(b). However, we do recognize that voluntary intoxication could negate the specific intent to commit the robbery, which is a requirement for felony murder. *See* State v. Buggs, 995 S.W.2d 102, 107 (Tenn. 1999) (holding the actor in a felony murder must "intend to commit the underlying felony at the time the killing occurs").[2]

Although trial counsel did not request an instruction on intoxication, the trial court was required, whether requested or not, to instruct the jury on intoxication if raised by the proof. *See* State v. Williamson, 919 S.W.2d 69, 80 (Tenn. Crim. App. 1995). Although proof was presented regarding the victim's intoxication, the only evidence suggesting the petitioner's intoxication was his statement to the police. This evidence does not suggest that the petitioner was incapable of forming the specific intent required for robbery. Furthermore, the petitioner has failed to present any additional evidence which trial counsel could have presented at trial to support his claim of intoxication. Thus, the petitioner has demonstrated neither deficiency nor prejudice.

## E. Failure to Object to Photographs

The petitioner submits trial counsel was ineffective in failing to object to prejudicial and cumulative photographs presented by the state during trial. These photographs were entered into evidence at the post-conviction relief hearing. Two exhibits show different angles of the victim's head on the autopsy table, and three exhibits show different angles of the victim's body with his head lying over the toilet.

Tennessee courts follow a policy of liberality in the admission of photographs in both civil and criminal cases. *See* State v. Banks, 564 S.W.2d 947, 949 (Tenn. 1978) (citations omitted).

---

[2]We do note, as did the post-conviction court, that at the time of trial voluntary intoxication was, at least arguably, not considered a defense to the crime of felony murder. *See* State v. Howard, 693 S.W.2d 365, 368 (Tenn. Crim. App. 1985).

-14-

Photographs of a corpse are generally admissible in murder prosecutions if they are relevant to the issues at trial, notwithstanding their gruesome character. State v. Carter, 114 S.W.3d 895, 902 (Tenn. 2003); *see* Tenn. R. Evid. 403.

Trial counsel explained he did not object to the admission of the photographs because after meeting with the prosecutor, he believed they were admissible to support the state's theory of the offense. We note they indeed demonstrate the nature and extent of the victim's injuries. The photographs were also relevant to negate the petitioner's claim of self-defense, his claim that he was unaware that the victim was seriously injured, and his claim that the victim's death resulted from alcohol poisoning rather than from the blows to his head. Therefore, the petitioner did not establish deficiency or prejudice.

## F. Failure to Request an Instruction on Second Degree Murder

The petitioner asserts trial counsel was ineffective in failing to request an instruction on second degree murder as a lesser-included offense of felony murder. However, the petitioner's trial occurred in April 1999, approximately seven months prior to Burns and more than two years prior to Ely. Furthermore, at the time of trial, second degree murder was not a lesser-included offense of reckless felony murder. *See* Gilliam, 901 S.W.2d at 390-91. Accordingly, this argument is without merit.

## G. Failure to Object to (i)(2) Aggravating Circumstance

The petitioner contends trial counsel was ineffective in failing to investigate his prior convictions from Ohio and in failing to object to the state's reliance upon the (i)(2) aggravating circumstance at the penalty phase at the time of his trial. We disagree with the petitioner's assertions.

The (i)(2) aggravating circumstance provides that "[t]he defendant was previously convicted of one (1) or more felonies, other than the present charge, whose statutory elements involve the use of violence to the person." *See* Tenn. Code Ann. § 39-13-204(i)(2). The state supported this circumstance with evidence that the petitioner had two prior robbery convictions in Ohio. *See* William Glenn Wiley, 2001 Tenn. Crim. App. LEXIS 303, at *11. When defense counsel argued to the jury about the defendant's testimony concerning the underlying facts of the robberies, the state objected. The state contended that neither the state nor defense counsel could address the underlying facts. This objection was understandable inasmuch as the Tennessee Supreme Court had "consistently held it was improper to introduce evidence regarding the facts and circumstances underlying a prior violent felony conviction . . . when the prior conviction on its face involved violence to the person." State v. Odom, 137 S.W.3d 572, 583 (Tenn. 2004). We conclude it was also reasonable for defense counsel to assume at the time of trial that the crime of robbery was one "whose statutory elements involve the use of violence to the person." *See* Tenn. Code Ann. § 39-13-204(i)(2).

In Sims, a case decided long after the trial of this case, our supreme court recognized that, in spite of the language of the aggravator as set forth in the statute, some offenses might require proof of the circumstances of the underlying conviction and approved admission of such evidence before the trial judge. State v. Sims, 45 S.W.3d 1, 11-12 (Tenn. 2001). This court has previously

concluded, in light of <u>Sims</u>, the robbery statute in Tennessee may or may not involve the use of "violence." <u>State v. Detrick Cole</u>, No. W2002-01254-CCA-R3-DD, 2003 Tenn. Crim. App. LEXIS 1002, at *52 (Tenn. Crim. App. Nov. 24, 2003), *pending review by Tennessee Supreme Court.* We again emphasize that these appellate cases were decided after the trial of this case.

In light of this background, we now turn to the two Ohio convictions for robbery. The applicable Ohio statute relating to the petitioner's convictions provides that "[n]o person, in attempting or committing a theft offense, . . . or in fleeing immediately after such attempt or offense, shall use or threaten the immediate use of force against another." Ohio R.C. § 2911.02(A) (1987). The petitioner maintains the elements of this statute do not necessarily require the use of violence. The Ohio legislature categorized robbery as an "offense of violence." *See id.* § 2901.01(I)(1) (1987). However, we recognize the issue is whether the "statutory elements [of the Ohio offenses] involve the use of violence to the person." *See* Tenn. Code Ann. § 39-13-204(i)(2). Regardless, in light of all of the circumstances confronting trial counsel at the time of trial, we are unable to conclude that trial counsel was deficient.

## H. Failure to Object to Victim Impact Evidence

The petitioner submits trial counsel was ineffective in failing to challenge the state's victim impact evidence as violating <u>State v. Nesbitt</u>, 978 S.W.2d 872 (Tenn. 1998), *cert. denied,* 526 U.S. 1052 (1999), and in failing to request a jury instruction regarding the evidence. We disagree with the petitioner's contentions.

During the penalty phase, Betty Andrews, the victim's mother, testified the victim was a "mama's boy" who talked to her daily. She explained the impact of the victim's death was "indescribable." As a result of his death, Ms. Andrews was unable to focus on her job, and, based upon her doctor's advice, retired early which impacted her financially.

Brianna Andrews, the victim's daughter who was sixteen years old when the victim died, described their relationship as "close." Due to the victim's death, she has been unable to share her school accomplishments with him. She testified the pain resulting from the victim's death was "unbearable" and had not become easier over time. She attempted to help her two younger siblings deal with the loss of their father.

Victim impact evidence generally should be limited to "information designed to show those unique characteristics which provide a brief glimpse into the life of the individual who has been killed, the contemporaneous and prospective circumstances surrounding the individual's death, and how those circumstances financially, emotionally, psychologically or physically impacted upon members of the victim's immediate family." <u>Nesbit</u>, 978 S.W.2d at 891. Victim impact evidence is inadmissible if the evidence is so unduly prejudicial as to render the trial fundamentally unfair or its probative value is substantially outweighed by its prejudicial effect. *Id.* Although <u>Nesbit</u> was a capital case, the standards in <u>Nesbit</u> have been applied in a non-capital case where the state sought and the defendant received life without parole. *See* <u>State v. Dondie Tidwell</u>, No. M2000-02628-CCA-R3-CD, 2002 Tenn. Crim. App. LEXIS 1089, at **44-45 (Tenn. Crim. App. Dec. 18, 2002). However, this court has also indicated that victim impact evidence is "clearly admissible" in a non-capital case. <u>State v. Aaron A. Winters, et al.</u>, No. 02C01-9802-CR-00053, 1999 Tenn. Crim. App.

LEXIS 846, at *33 (Tenn. Crim. App. Aug. 19, 1999), *perm. to app. denied* (Tenn. 2000). Regardless, we conclude the evidence was admissible under Nesbit.

In order for the trial court to adequately supervise the admission of victim impact evidence and ensure such evidence is properly limited, the state must notify the trial court of its intent to introduce the evidence; the trial court must conduct a jury-out hearing to determine the admissibility of the evidence; and the trial court must determine that evidence of one or more aggravating circumstances is already present in the record prior to admitting the evidence. Nesbit, 978 S.W.2d at 891. However, this procedure is not constitutionally mandated but simply enables adequate supervision of the admission of victim impact evidence. State v. Austin, 87 S.W.3d 447, 463 (Tenn. 2002), *cert. denied*, 538 U.S. 1001 (2003). Furthermore, the jury instruction provided in Nesbit is merely a suggestion. State v. Reid, 91 S.W.3d 247, 283 (Tenn. 2002), *cert. denied, ___ U.S. ___,* 124 S. Ct. 56 (2003); Nesbit, 978 S.W.2d at 892.

In the case at bar, the victim impact evidence was limited to the victim's role as son and father and to the loss suffered by the victim's immediate family. It was allowable under Nesbit. This testimony was not presented until the prosecution introduced proof of the aggravating circumstances. Although the trial court did not charge the jury pursuant to Nesbit, it instructed the jury to refrain from considering additional facts and circumstances other than those specified in the two aggravating circumstances relied upon by the state. We conclude this victim impact evidence was not unduly prejudicial, and its probative value was not substantially outweighed by its prejudicial impact. To the extent trial counsel was deficient in failing to insist on the Nesbit procedures, the petitioner has failed to establish prejudice. Thus, this issue lacks merit.

## I. Cumulative Errors

The petitioners submits the individual and cumulative errors committed by trial counsel resulted in prejudice. However, we have concluded none of the individual issues raised by the petitioner constituted ineffective assistance of counsel. This argument is without merit.

## VI. DNA ANALYSIS

The petitioner asserts the results of the DNA analysis of the bloody towel alone warrant reversal of his convictions. The petitioner further asserts trial counsel's failure to obtain DNA analysis on the towel amounted to ineffective assistance of counsel. We disagree with these contentions.

Pursuant to the DNA Analysis Act of 2001,

a person convicted of and sentenced for the commission of first degree murder . . . may at any time, file a petition requesting the forensic DNA analysis of any evidence that is in the possession or control of the prosecution, law enforcement, laboratory, or court, and that is related to the investigation or prosecution that resulted in the judgment of conviction and that may contain biological evidence.

Tenn. Code Ann. § 40-30-303 (2003).

The petitioner requested that the post-conviction court order DNA testing on a bloody towel found in the motel room where the victim was killed. The petitioner claimed the victim struck his nose causing it to bleed and that he used the towel to wipe the blood from his nose. The petitioner averred DNA testing would reveal the presence of his blood on the towel and, thus, support his self-defense claim.

The post-conviction court granted the petitioner's request for DNA analysis pursuant to Tennessee Code Annotated section 40-30-305 (2003), which provides that a court may order DNA analysis upon finding that:

(1) A reasonable probability exists that analysis of the evidence will produce DNA results which would have rendered the petitioner's verdict or sentence more favorable if the results had been available at the proceeding leading to the judgment of conviction;

(2) The evidence is still in existence and in such a condition that DNA analysis may be conducted;

(3) The evidence was never previously subjected to DNA analysis, or was not subjected to the analysis that is now requested which could resolve an issue not resolved by previous analysis; and

(4) The application for analysis is made for the purpose of demonstrating innocence and not to unreasonably delay the execution of sentence or administration of justice.

The results of the DNA analysis indicated the presence of the petitioner's blood on the towel.

In our view, the mere fact that a post-conviction court orders DNA testing does not necessarily mandate that relief from the conviction or sentence will be subsequently granted if the results are favorable. Here, we agree with the post-conviction court and are unable to conclude the presence of the petitioner's blood on the towel would have resulted in a more favorable verdict or sentence. The post-conviction court noted it was unable to reconcile the petitioner's testimony at the post-conviction hearing that the victim assaulted him with his failure on all previous occasions to mention that the victim struck him in the nose causing it to bleed. Furthermore, the petitioner's version of the events is inconsistent with the condition of the victim and the bathroom where the victim's body was discovered. Finally, even if the victim struck the petitioner's nose, the doctrine of self-defense does not authorize the petitioner's use of deadly force in this situation.

Furthermore, trial counsel was not ineffective in failing to obtain a DNA analysis of the towel and in failing to introduce the results at trial. The post-conviction court, specifically accrediting the testimony of trial counsel, found the petitioner did not tell trial counsel he was hit in the nose. In addition, as noted above, the results of the analysis would not have affected the judgment. Thus, the petitioner has failed to demonstrate deficiency or prejudice. Accordingly, this issue is without merit.

## VII. REMAINING ISSUES

The petitioner avers the trial court erred in failing to instruct the jury on intoxication, in admitting victim impact evidence, in failing to instruct the jury regarding the victim impact evidence, and in erroneously instructing the jury regarding the (i)(2) aggravating circumstance. However, the petitioner failed to present these free-standing claims on direct appeal. Accordingly, these issues are waived. *See* Tenn. Code Ann. § 40-30-106(g).

Based upon our review of the record, we affirm the judgment of the post-conviction court.

_____
JOE G. RILEY, JUDGE